## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

REBECCA D. ALDRICH,

               Plaintiff

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1]

              Defendant

CIVIL ACTION NO. 3:13-CV-1292

(MEHALCHICK, M.J.)

### MEMORANDUM

The record in this action (Doc. 11) has been reviewed pursuant to 42 U.S.C. § 405(g) to determine if there is substantial evidence to support the Social Security Administration's decision denying the claim of Plaintiff, Rebecca Aldrich, for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-433.

### I.   PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on June 30, 2010, alleging she was disabled due to fibromyalgia, arthritis, depression, ovarian cyst, gall bladder disease, liver cyst, kidney stones, and severe vomiting, beginning January 2, 2010.

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioned of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this case.  Pursuant to the last sentence of 42 U.S.C. §405(g), no further action needs to be taken.

(Tr. 147-52; Doc. 11-5).[2] On October 27, 2010, Plaintiff's claim was denied. (Tr. 121-24; Doc. 11-4). On December 10, 2010, Plaintiff filed a written request for a hearing. (Tr. 127-28; Doc. 11-4). On September 26, 2011, Plaintiff appeared and testified at an administrative hearing before Administrative Law Judge (ALJ) Ronald Sweeda in Wilkes-Barre, Pennsylvania. (Tr. 51-68; Doc. 11-2). In order to allow Plaintiff additional time to submit updated medical evidence, Plaintiff's hearing was continued to December 13, 2011. (Tr. 13-17, 66-67; Doc. 11-2). On December 13, 2011, Plaintiff appeared and testified at the second administrative hearing before ALJ Sweeda in Wilkes-Barre, Pennsylvania. (Tr. 71-94; Doc. 11-2). On December 21, 2011, the ALJ denied Plaintiff's application in a written decision. (Tr. 99-114; Doc. 11-3). On January 3, 2012, Plaintiff filed a written request for review by the Appeals Council. (Tr. 143-45; Doc. 11-4). On March 1, 2012, Plaintiff's request for review was denied.  (Tr. 1-6; Doc. 11-2).

On June 28, 2012, Plaintiff, proceeding *pro se*, filed a complaint in the United States District Court for the Eastern District of Pennsylvania, appealing the final decision denying her Title II application for disability insurance benefits pursuant to 42 U.S.C. §405(g).  (Doc. 6). The Court granted Plaintiff's motion to proceed *in forma pauperis*. (Doc. 5). On July 5, 2012, Plaintiff's counsel entered his appearance.  (Doc. 9). On September 7, 2012, Defendant filed an answer to Plaintiff's complaint together with a copy of the administrative record. (Docs. 10, 11).

---

[2] "Tr." refers to the transcript from the Social Security Administration and appears as Document 11 and its attachments on the ECF docket report. The pinpoint citations to the transcript refer to the Bates-stamped number in the bottom right-hand corner of each page in Document 11.

On October 9, 2012, Plaintiff filed her brief. (Doc. 12). On October 26, 2012, Defendant filed a response. (Doc. 13). On March 22, 2013, Chief Magistrate Judge Carol Sandra Moore Wells issued a Report and Recommendation that the case be transferred to the Middle District of Pennsylvania, where Plaintiff resides. (Doc. 16). On April 10, 2013, the Report and Recommendation was adopted (Doc. 17) and the case was transferred to the Middle District of Pennsylvania. (Doc. 18). This appeal is now ripe for disposition.[3]

## II.   STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988); *Johnson v. Commissioner of Social Sec.*, 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); *Johnson*, 529 F.3d at 200. Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the

---

[3] Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal." L.R. 83.40.1.

evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A) (the "Act").

## III. DISABILITY EVALUATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§ 404.1520, 416.920.

IV.   **THE ALJ'S DECISION**

Using the above-outlined procedure, the ALJ determined that the plaintiff met the insured status requirements of the Act through December 31, 2014. (Tr. 99-114; Doc. 11-3). The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from January 2, 2010, through December 21, 2011, the date of the decision. (Tr. 113; Doc. 11-3). The ALJ concluded that Plaintiff did not engage in substantial gainful activity since her alleged onset date of January 2, 2010. 20 C.F.R. §404.1571 *et seq.*; (Tr. 101; Doc. 11-3). The ALJ further concluded that, through her last date insured, Plaintiff had severe impairments of fibromyalgia, asthma, degenerative disc disease, and carpal tunnel syndrome. 20 C.F.R. §404.1520(c); (Tr. 101-06; Doc. 11-3). The ALJ also found that Plaintiff's alleged impairments due to gall bladder removal, kidney stones, ovarian and liver cysts, thyroid nodule, heart murmur, stress tremor in her lower extremities, depressive disorder, anxiety disorder, and opioid dependence were medically determinable, but not severe. (Tr. 101-06; Doc. 11-3). Further, the ALJ determined that Plaintiff's alleged impairment due to rheumatoid arthritis was not medically determinable. (Tr. 101-06; Doc. 11-3). The ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; (Tr. 106; Doc. 11-3).

The ALJ next determined that Plaintiff had the residual function capacity ("RFC") to perform light work,[4] except that she could not perform work that would involve crawling, kneeling, climbing ladders or scaffolds, overhead work, or exposure to unprotected heights, dangerous machinery, or pulmonary irritants. (Tr. 106-112; Doc. 11-3). Further, the ALJ found that Plaintiff could perform less than frequent fingering, bilaterally. (Tr. 106-112; Doc. 11-3). The ALJ concluded that Plaintiff was unable to perform her past relevant work as an admissions representative and customer service/account representative. 20 C.F.R. §404.1565; (Tr. 112; Doc. 11-3). The ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. 20 C.F.R. §§404.1569, and 404.1569(a); (Tr. 113; Doc. 11-3).

## V.   EVIDENCE OF RECORD

### A.   PLAINTIFF'S TESTIMONY

Plaintiff, represented by counsel, appeared and testified at two ALJ hearings. The first hearing took place on September 26, 2011. The second hearing took place on December 13, 2011. Plaintiff was born on March 10, 1972,[5] has the equivalent of a high school education,[6]

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §404.1567(b).

[5] At the time of the administrative hearing held in this case, Plaintiff was 39 years of age. Under the Social Security regulations a person under 50 years of age is considered a younger person. 20 C.F.R. § 404.1563(c).

and can read, write, speak, and understand the English language, and perform basic math functions such as counting change and paying bills. (Tr. 56-57, 206, 243; Docs. 11-2, 11-6). After finishing her GED, Plaintiff completed additional vocational training to become a medical assistant in 2007. (Tr. 206; Doc. 11-6). Plaintiff testified that her only work subsequent to her alleged onset date of January 2, 2010, was in April 2010. (Tr. 57, 201; Docs. 11-2, 11-6). Plaintiff worked for approximately twenty days before she was "let go" due to complications with her ongoing illnesses, and because she needed to continuously move around to alleviate her pain. (Tr. 57, 201; Docs. 11-2, 11-6). At the time of the first hearing, Plaintiff admitted that she was receiving unemployment benefits. (Tr. 58; Doc. 11-2). Plaintiff was still collecting unemployment benefits at the time of the second hearing. (Tr. 73; Doc. 11-2).

At the September 2011 hearing, Plaintiff testified that she was unable to work due to neck pain that radiated down her right arm, back pain that radiates down her right leg, carpal tunnel, fibromyalgia, fatigue, asthma resulting in two flare-ups per month, and gall bladder disease resulting in episodes of vomiting which occur once per month and can last up to three days. (Tr. 59; Doc. 11-2). In December 2011, Plaintiff testified that she was not able to work due to her: mental state; arthritis in her hands; carpal tunnel which caused pain and numbness in her right arm; difficulty sleeping; neck pain from a car accident which caused stiffness, numbness, and tingling down both arms; bronchial asthma; and back pain which caused numbness in her lower extremities and prevented her from sitting for long periods. (Tr. 78; Doc. 11-2). Plaintiff also testified that she suffered from episodes of depression as a result of her other

---

[6] Plaintiff completed her GED in 1990. (Tr. 206; Doc. 11-6).

impairments, though admitted that she was not receiving any counseling; her treating physician prescribed Xanax to manage her feelings of depression and anxiety. (Tr. 86; Doc. 11-2). Plaintiff testified that her ability to function was limited by several medication side-effects, including: impaired vision and mild disorientation from Lyrica; fatigue due to Vicoprofen and OxyContin; and numbness, tingling, and pain due to Symbicort and Prednisone Pac. (Tr. 82; Doc. 11-2).

Plaintiff spent most days watching television, trying to vacuum, and paying bills. (Tr. 89; Doc. 11-2). At the December 2011 hearing, Plaintiff testified she could walk for two blocks without sitting down, and had occasional difficulty gripping and opening bottles and cans. (Tr. 82-83, 85; Doc. 11-2). She also asserted that she could sit for up to fifteen minutes at one time in a solid chair before she needed to stand up. (Tr. 89; Doc. 11-2). Plaintiff had some difficulty with personal care, including styling her hair, and fastening zippers and buttons while dressing herself. (Tr. 87; Doc. 11-2). She was able to do some household chores. Specifically, she could vacuum, though usually got winded and had to rest after she finished, dust, and cook, but she usually received assistance while cooking. (Tr. 88; Doc. 11-2). Plaintiff had a driver's license, and was "sometimes" able to drive. (Tr. 56; Doc. 11-2). She asserted that her ability to drive was affected by her medication side effects, and her inability to sit for long periods of time. (Tr. 56; Doc. 11-2).

Plaintiff asserted that her impairments were treated by her primary care physician, Dr. Anselmi, who she saw or spoke to approximately once per month since May 2010. (Tr. 59-60; Doc. 11-2). She testified that Dr. Anselmi diagnosed her with fibromyalgia and arthritis. (Tr. 62-63; Doc. 11-2). Dr. Anselmi prescribed Plaintiff OxyContin and Vicoprofen to manage her pain. (Tr. 59-60, 78-79; Doc. 11-2). Plaintiff further asserted that Dr. Anselmi was aware of her

past problems with narcotic pain medication addiction. (Tr. 61, 79; Doc. 11-2). She did not have a narcotic pain contract with Dr. Anselmi. (Tr. 61; Doc. 11-2). Plaintiff had a narcotic pain contract with Dr. Janerich. (Tr. 61; Doc. 11-2). Plaintiff recalled that she was examined by Dr. Janerich twice to receive injections for her back, neck, and for an EMG. (Tr. 61; Doc. 11-2). Plaintiff was supposed to schedule an appointment with Dr. Janerich every four to six weeks, but generally there was a longer gap between appointments due to scheduling difficulties.  (Tr. 81; Doc. 11-2).

On July 31, 2010, Plaintiff completed a pain questionnaire. (Tr. 224-26; Doc. 11-6). Plaintiff indicated that she began to experience constant aching, throbbing, and crushing pain in her leg, knees, arms, chest, neck, feet, and hands in February 2009. (Tr. 224-26; Doc. 11-6). She described that her pain originated in her feet, radiated up her leg, through her hips, and into her back. (Tr. 224-26; Doc. 11-6). Plaintiff also experienced pain originating in her hands, and radiated up her arms and into her neck. (Tr. 224-26; Doc. 11-6). Plaintiff indicated that pain prevented her from lifting, opening bottles, carrying objects, sleeping, kneeling, cleaning her home, mowing the lawn, using a computer, typing, and writing. (Tr. 224-26; Doc. 11-6). Plaintiff also completed a function report, in which she assessed her own limitations due to her impairments. (Tr. 240-47; Doc. 11-6). Plaintiff asserted that her impairments affected her abilities to: lift; squat; bend; stand; reach; walk; sit; kneel; climb stairs; remember; complete tasks; concentrate; understand; follow instructions; and use her hands. (Tr. 245; Doc. 11-6). Plaintiff indicated that she could not walk more than fifty feet at one time, she had difficulty completing tasks, and her ability to understand written and spoken instructions, handle stress, and adjust to changes in routine was reduced due to her impairments. (Tr. 245-46; Doc. 11-6).

Additionally, in her function report, Plaintiff revealed that she lived in a house with her family where she was responsible for caring for her son. (Tr. 241; Doc. 11-6). Plaintiff indicated she had difficulty dressing, bathing, and shaving. (Tr. 241; Doc. 11-6). Plaintiff reported "sometimes" preparing meals, but with great difficulty due to the pain in her hands, being able to do minimal cleaning and laundry, but needing a list and reminders to stay on task. (Tr. 241-42; Doc. 11-6). She went outside daily, was able to go out alone "sometimes," and could drive and grocery shop "sometimes." (Tr. 243-44; Doc. 11-6). Plaintiff was able to pay bills and count change, but could not handle a savings or checking account due her propensity to overdraw the accounts when buying pain medications. (Tr. 243-44; Doc. 11-6). Plaintiff's husband, Donald E. Aldrich, completed a third party function report which is, in large part, consistent with Plaintiff's function report. (Tr. 213-21; Doc. 11-6).

B. MEDICAL OPINION EVIDENCE

### 1. Dr. Lanning Anselmi, M.D.

On February 12, 2011, Dr. Lanning Anselmi completed a physical residual functional capacity questionnaire in which he was asked to assess Plaintiff's functional limitation due to her alleged impairments. (Tr. 435-38; Doc. 11-8). Dr. Anselmi assessed that Plaintiff could: sit for 1 hour and 5 minutes at a time; stand for 1 hour at a time; stand or walk for less than 2 hours per 8 hour workday; occasionally lift less than 10 pounds; frequently look down, turn her head, look up, and hold her head in a static position; occasionally twist, stoop, crouch, and climb ladders and stairs. Dr. Anselmi also opined that Plaintiff required a job where she was permitted to: stand or walk for 2 minutes after every 15 minutes of work; shift positions at will; and take unscheduled work breaks. Dr. Anselmi reported that Plaintiff had no significant difficulty reaching, handling, or fingering. He also indicated that Plaintiff's emotional factors

and anxiety were likely to impact her physical condition, and that the combination of her impairments would produce good and bad days which would cause Plaintiff to be absent from work more than 4 days per month. (Tr. 435-38; Doc. 11-8).

On September 22, 2011, Dr. Anselmi completed a second functional evaluation form. (Tr. 568-69; Doc. 11-9). Dr. Anselmi assessed that Plaintiff could: sit for 1 hour per 8 hour workday; stand or walk for 2 hours per 8 hour workday; lift a maximum of 5 pounds; frequently lift 2 pounds; occasionally lift 2 pounds; and, occasionally climb, balance, stoop, crouch, kneel and crawl. Dr. Anselmi also indicated that Plaintiff's ability to reach, handle, feel, push, and pull were affected by her impairments, and that Plaintiff should avoid exposure to heights, moving machinery, dust, noise, fumes, and humidity. On the same date, Dr. Anselmi completed an assessment of Plaintiff's functional limitations due to mental impairment. (Tr. 570-71; Doc. 11-9). Dr. Anselmi opined that Plaintiff's ability to perform unskilled work was limited but satisfactory in her ability to: understand and remember very short and simple instructions; carry out short and simple instructions; work in coordination with or proximity to others without being unduly distracted; make simple work related decisions; and ask simple questions or request assistance. Dr. Anselmi opined that Plaintiff's ability to perform unskilled work was seriously limited but she could remember work-like procedures, sustain an ordinary routine without special supervision, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, and be aware of normal hazards and take appropriate notice. Finally, Dr. Anselmi opined that Plaintiff's skills did not meet competitive standards in the unskilled labor market in the areas of maintaining attention for a two hour segment, maintaining regular

attendance, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length or rest breaks. (Tr. 570-71; Doc. 11-9).

With respect to Plaintiff's ability to perform skilled work, Dr. Anselmi opined that: Plaintiff was seriously limited but not precluded by her capacity to understand and remember detailed instructions; and Plaintiff's skills in the areas of carrying out detailed instructions, setting realistic goals, and dealing with stress did not meet competitive standards. (Tr. 570-71; Doc. 11-9). Dr. Anselmi also opined that Plaintiff's abilities to maintain socially appropriate behavior, and adhere to basic standards of cleanliness were unlimited by her impairment. (Tr. 570-71; Doc. 11-9). Plaintiff could satisfactorily interact with the public. (Tr. 570-71; Doc. 11-9). He also indicated that Plaintiff was seriously limited in her ability to use public transportation, and unable to meet competitive standards due to her unwillingness to travel to an unfamiliar place. (Tr. 570-71; Doc. 11-9). The ALJ accorded Dr. Anselmi's opinion little weight because his assessment was unsupported by his treatment notes and inconsistent with Plaintiff's self-reported limitations. (Tr. 111; Doc. 11-3).

### 2. State Agency Medical Consultant, Dwin Campbell, M.D.

Dr. Campbell examined Plaintiff on September 22, 2010, and completed a medical source statement in which he assessed Plaintiff's functional limitations due to her impairments. (Tr. 364-65; Doc. 11-7). Dr. Campbell concluded that Plaintiff could occasionally lift and carry 20 pounds, frequently lift or carry 10 pounds, stand or walk between 4 and 5 hours per 8 hour workday, sit for eight hours if she is permitted to alternate between sitting and standing, push or pull with her upper and lower extremities in accordance with her capacity to lift and carry, and never bend, kneel, stoop, crouch, balance, or climb. Dr. Campbell also indicated that Plaintiff

12

had some limitation in her ability to reach and must avoid exposure to poorly ventilated environments where she could be exposed to inhalants, wetness, dust, fumes, or humidity due to her asthma. (Tr. 365; Doc. 11-7). The ALJ accorded Dr. Campbell's opinion some weight, but concluded that it was not entirely consistent with other medical evidence, or his own clinical observations. (Tr. 111; Doc. 11-3). Specifically, the ALJ found that the postural limitations identified by Dr. Campbell were inconsistent with his clinical observation that Plaintiff had a full range of motion in all joints. (Tr. 111; Doc. 11-3).

### 3.   State Agency Medical Consultant, Gebreye Rufael, M.D.

On October 14, 2010, Dr. Gebreye Rufael, a specialist in the area of internal medicine, issued an assessment after reviewing Plaintiff's medical records. (Tr. 409; Doc. 11-8). Dr. Rufael noted that his assessment did not address Plaintiff's pulmonary or rheumatology issues. Dr. Rufael concluded that Plaintiff's alleged impairments due to her heart murmur and thyroid nodule were medically determinable, but non-severe. Further, Dr. Rufael found that Plaintiff's alleged impairments due to her kidney stone, gall bladder removal, and ovarian cyst were not medically determinable. The ALJ accorded the opinion of Dr. Rufael great weight. (Tr. 102; Doc. 11-3).

### 4.   State Agency Medical Consultant, Edward Layne, M.D.

On October 19, 2010, Dr. Edward Layne, a neurosurgeon, assessed Plaintiff's impairment due to the tremor in her lower extremities. (Tr. 411; Doc. 11-8). After reviewing Plaintiff's medical records, Dr. Layne opined that Plaintiff suffered from a stress tremor and concluded that Plaintiff's stress tremor was medically determinable, but non-severe. (Tr. 411; Doc. 11-8). The ALJ assigned the opinion of Dr. Layne great weight. (Tr. 102; Doc. 11-3).

13

### 5.   State Agency Medical Consultant, Barbara Cochran, M.D.

On October 26, 2010, Dr. Barbara Cochran, a rheumatologist, assessed Plaintiff's impairments due to rheumatoid arthritis and fibromyalgia. (Tr. 413; Doc. 11-8). After reviewing Plaintiff's medical records, Dr. Cochran noted that there was no medical evidence of record to support any rheumatologic medically determinable impairment and concluded that Plaintiff's impairments due to rheumatoid arthritis and fibromyalgia were not medically determinable. The ALJ accorded great weight to Dr. Cochran's assessment of Plaintiff's alleged impairment due to rheumatoid arthritis, but did not adopt her assessment of Plaintiff's impairment due to fibromyalgia. (Tr. 102-03; Doc. 11-3).

### 6.   State Agency Medical Consultant, Carmen Fratto, M.D.

On October 26, Dr. Carmen Fratto, a pulmonologist, assessed Plaintiff's impairment due to asthma. (Tr. 414; Doc. 11-8). After reviewing Plaintiff's medical records, Dr. Fratto noted that Plaintiff's chart did not indicate any frequent severe asthma attacks requiring intensive treatment or any history of severe chronic respiratory insufficiency. Dr. Fratto concluded that Plaintiff's impairment due to asthma was medically determinable, but non-severe. The ALJ considered Dr. Fratto's opinion, but gave Plaintiff the benefit of the doubt and concluded that Plaintiff's asthma was both medically determinable and severe. (Tr. 103; Doc. 11-3).

### 7.   State Agency Psychological Consultant, Stephen Timchack, Psy.D.

On September 30, 2010, state agency psychological consultant Stephan Timchack conducted a mental status examination of Plaintiff, diagnosed Plaintiff with anxiety disorder,

depressive disorder, and opiate dependence, and assessed Plaintiff with a GAF score of 70.[7] (Tr. 369-75; Doc. 11-7). On October 15, 2010, Dr. Timchack submitted a form evaluating Plaintiff's functional limitations due to her medically determinable mental impairments. (Tr. 367-68; Doc. 11-7). Dr. Timchack opined that Plaintiff's impairments affected her ability to respond appropriately to supervision, co-workers, and work pressures. Specifically, he found that Plaintiff had a slight restriction in her ability to interact appropriately with the public and with supervisors, and to respond appropriately to pressures or changes in routine in the usual work setting. Dr. Timchack noted, however, that Plaintiff's ability to understand, remember, and carry out instructions was not affected by her impairments. The ALJ accorded great weight to Dr. Timchack's opinion and clinical observations, but assigned limited weight to Plaintiff's GAF scores. (Tr. 105-06; Doc. 11-3).

### 8.  State Agency Psychological Consultant, Charles Lawrence, Ph.D.

On October 25, 2010, Charles Lawrence, a state agency psychological consultant, assessed Plaintiff's alleged mental impairments. (Tr. 412; Doc. 11-8). Dr. Lawrence noted that his review was limited to a psychological evaluation prepared by Dr. Stephan Timchack, as the medical records from Plaintiff's only treating source, her primary care physician, had not yet been received. After reviewing Plaintiff's mental health records, Dr. Lawrence opined that Plaintiff's alleged mental impairments due to depressive disorder, anxiety disorder, and opioid dependence were medically determinable, but non-severe. (Tr. 381-92,412; Docs. 11-7, 11-8).

---

[7] A GAF score of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. *Diagnostic and Statistical Manual of Mental Disorders,* 32 -35(4th ed. text rev., 2000).

Dr. Lawrence completed a psychiatric review technique form. (Tr. 381-92; Doc. 11-7). Dr. Lawrence opined that Plaintiff suffered from a mild limitation in her activities of daily living, and in the areas of social functioning, and maintaining concentration, persistence and pace. He observed that Plaintiff had no episodes of decompensation. (Tr. 391; Doc. 11-7). Dr. Lawrence also found that the evidence did not establish the presence of "C" criteria. (Tr. 392; Doc. 11-7). The ALJ accorded great weight to Dr. Lawrence's assessment of Plaintiff's mental impairments. (Tr. 105; Doc. 11-3).

   C. VOCATIONAL EXPERT TESTIMONY

   Impartial vocational expert Josephine A. Doherty appeared and testified at Plaintiff's hearing on December 13, 2011. (Tr. 89-93; Doc. 11-2). In a document she filed with the Social Security Administration, Plaintiff stated that she worked at an outlet store, in customer service, at a bakery, and at an outsource company. (Tr. 231; Doc. 11-6). Doherty testified that Plaintiff had past relevant employment[8] as: a retail store worker, a semi-skilled position with a heavy exertion level; an admissions representative, at the outsource company, a semi-skilled position with a heavy exertion level; and, a customer service account representative, a semi-skilled position with a sedentary exertion level. (Tr. 90; Doc. 11-2).

   In the first hypothetical, the ALJ asked whether a person of Plaintiff's age, education, and work experience could perform Plaintiff's past relevant work, if that individual had the RFC to perform light work that: would not involve crawling, kneeling, climbing, or overhead

---

   [8] Past relevant employment in the present case means work performed by Plaintiff during the 15 years prior to the date her claim for disability was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560 and 404.1565.

work; required less than frequent bilateral fine fingering; and, had no exposure to unprotected heights, dangerous machinery, or pulmonary irritants. (Tr. 90; Doc. 11-2). The VE responded that such an individual would not be capable of performing Plaintiff's past relevant work, but identified three representative jobs that such an individual could perform. (Tr. 90; Doc. 11-2). The VE testified that an individual with the above vocational factors and RFC could perform work as: a furniture rental clerk, DOT 295.357-018, an unskilled position with a light exertion level, and 1,021 positions in Pennsylvania; a customer service representative for dealer accounts, DOT 241.367-038, an unskilled position with a light exertion level and 1,660 positions in Pennsylvania; and, a shipping/receiving weigher, DOT 222.387-014, an unskilled position with a light exertion level, and 570 positions in Pennsylvania. (Tr. 90-91; Doc. 11-2).

In the second hypothetical, the ALJ appended one additional limitation to the first hypothetical. Specifically, the ALJ asked whether there was work that the same hypothetical worker could perform, if that individual needed to change positions from sitting to standing at least every fifteen minutes. (Tr. 91; Doc. 11-2). The VE responded that such an individual would be capable of performing the same three positions, except that the occupational base for the customer service representative for dealer accounts would be eroded by approximately 50% due to the additional limitation. (Tr. 91; Doc. 11-2).

In the third hypothetical, the ALJ asked whether there was work that the same hypothetical worker could perform, if that individual would be off-task for 20% of each work day due to medication side-effects. (Tr. 91; Doc. 11-2). The VE responded that there would be no work that such an individual could perform. (Tr. 91; Doc. 11-2).

In the fourth hypothetical, Plaintiff's counsel asked whether there would be work available for an individual who could sit for only one-hour per eight-hour workday, and stand

17

for two-hours per eight-hour workday.  (Tr. 92; Doc. 11-2).  The VE responded that there would be no work available for such an individual. (Tr. 92; Doc. 11-2).

In the fifth hypothetical, Plaintiff's counsel asked whether there would be work available for an individual who would be absent more than four days per month. (Tr. 93; Doc. 11-2). The VE responded that such a limitation would preclude an individual from most unskilled positions. (Tr. 93; Doc. 11-2).

## VI.   DISCUSSION

The Court finds that the ALJ's conclusion that Plaintiff is able to sustain regular and continued work activities is supported by substantial evidence. Plaintiff argues that: (1) the ALJ erred in according little weight to the medical opinion of her treating physicians; (2) the ALJ failed to properly evaluate the claimant's non-exertional impairments and their impact on the claimant's ability to do past work; (3) the ALJ failed to consider the side effects of the claimant's medications; (4) the ALJ erred in properly evaluating Plaintiff's subjective complaints; (5) the ALJ erred in considering Plaintiff's receipt of unemployment compensation benefits during the relevant period as inconsistent with her assertion that she was unable to work; and (6) the ALJ failed to properly evaluate Plaintiff's residual function capacity. The Court will discuss each of Plaintiff's contentions in turn.

### A.   THE ALJ DID NOT ERR IN ACCORDING LITTLE WEIGHT TO THE MEDICAL OPINION OF PLAINTIFF'S TREATING PHYSICIAN.

Plaintiff alleges that the ALJ erred in his treatment of the medical records and opinion of one of Plaintiff's treating physicians, Dr. Anselmi, and argues that this medical opinion should have been accorded greater weight. (Doc. 12 pp. 5-7).  In general, an ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."

*Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). When the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit; however, he "cannot reject evidence for no reason or for the wrong reason." *Morales*, 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429). "The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled." *Morales*, 225 F.3d at 317 (citing *Adorno*, 40 F.3d at 48). Furthermore, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make 'speculative inferences from medical reports' and may reject 'a treating physician's opinion outright only on the basis of contradictory medical evidence' and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (quoting *Plummer*, 186 F.3d at 429).

Here, Plaintiff argues the ALJ erred in according less than controlling weight to the medical opinion of Plaintiff's treating physician, Dr. Anselmi. Plaintiff contends that the ALJ's finding is based upon his own lay opinion of the medical evidence and that the ALJ failed to cite to any contradictory medical evidence. (Doc. 12, p. 6). In assigning little weight to the medical opinion of Dr. Anselmi, the ALJ found that:

> Dr. Anselmi's opinion that the claimant would not even be capable of performing sedentary work on a gainful basis, and his note that claimant is not able to work is given little weight. Dr. Anselmi's opinions are not supported by the other medical evidence of record, including his own treatment notes which offer little detail or insight into claimant's limitations. Additionally, the limitations noted by Dr. Anselmi are not even consistent with the claimant's self-reported limitations.

(Tr. 111; Doc. 11-3).

The ALJ's decision to accord limited weight to the medical opinion of Dr. Anselmi is preceded by a five-page summary in which he analyzed and assigned weight to the medical

19

opinions of each treating, examining, and reviewing physician. Further, the ALJ accurately observed that Dr. Anselmi's treatment notes did not provide any insight as to the basis for his opinion. For example, in Dr. Campbell's examination notes, he records his observations regarding Plaintiff's abilities to ambulate, walk on her heels and toes, rise from a squat position, and get on and off the examination table; such observations are entirely absent from Dr. Anselmi's treatment notes. (*See* Tr. 360; Doc. 11-7). Thus, the ALJ's decision to accord Dr. Anselmi's medical opinion limited weight because it is unsupported in the record is based on substantial evidence and the Court finds that the ALJ did not err in assigning Dr. Anselmi's medical opinion limited weight.

B. THE ALJ UTILIZED THE CORRECT ANALYTICAL FRAMEWORK TO EVALUATE PLAINTIFF'S NON-EXERTIONAL LIMITATIONS.

Plaintiff asserts that the ALJ failed to apply the correct analytical framework in accordance with *Sykes v. Apfel*. 228 F.3d 259 (3d Cir. 2000). Where, as here, an individual has an impairment or combination of impairments resulting in both exertional and non-exertional limitations, the Social Security Regulations provide a framework under which to evaluate the effect of a Plaintiff's combined limitations on her ability to work. Under these regulations the ALJ must first apply the medical vocational guidelines to determine whether a finding of disabled may be possible based on exertional limitations alone. 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200(e)(2). Furthermore, the ALJ cannot determine that a Plaintiff's non-exertional impairments "do not significantly erode [her] occupational base under the medical vocational guidelines without... taking additional vocational evidence." *Sykes v. Apfel*, 228 F.3d 259, 261 (3d Cir. 2000).

In his decision, the ALJ found that consideration of only Plaintiff's exertional limitations warranted a finding of "not disabled" pursuant to Medical-Vocational Rule 202.21. (Tr. 113; Doc. 11-3). The ALJ then consulted a VE, who testified that, given her age, education, work experience, and RFC, Plaintiff would be able to perform the requirements of representative occupations such as a furniture rental clerk, DOT 295.357-018; customer service representative, DOT 241.367-038; and shipping/receiving weigher, DOT 222.387-014. In this case, the ALJ sought additional vocational evidence from the VE before concluding Plaintiff's non-exertional limitations did not significantly erode her occupational base at step five of his analysis. The ALJ asked the VE whether there was work that an individual, who, among other limitations, was precluded from exposure to unprotected heights and machinery, could perform. (Tr. 90; Doc. 11-2). The VE identified three representative positions. Moreover, the ALJ noted in his decision that the "[l]imitations pertaining to hazards are warranted based on a history of opiate abuse and ongoing use of narcotic pain medication." (Tr. 112; Doc. 11-3).

Plaintiff also asserts that the ALJ's RFC analysis does not account for her medically determinable, but non-severe, impairments of anxiety and depression. The ALJ assessed Plaintiff's alleged limitations due to depression under section 12.00 C of the Listing of Impairments. 20 C.F.R., Part 404, Subpart P, Appendix 1. Under section 12.00C, a Plaintiff's impairment is assessed based on four broad functional areas, known as the "paragraph B" criteria.[9] The ALJ found in his "paragraph B" analysis that:

---

[9] The four broad functional areas specified in paragraph B are: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation of extended duration. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1.

> In activities of daily living, social functioning, and concentration, persistence or pace, there is no evidence that the claimant has any more than a mild limitation. Psychologically, no one has recommended counseling although the claimant is prescribed Xanax by Dr. Anselmi which she takes as needed……..She has sufficient concentration to pay the bills, watch television then perform some housework.

(Tr. 105; Doc. 11-3). The ALJ also stated that "the following residual functional capacity reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Tr. 106; Doc. 11-3). Accordingly, the Court finds that the ALJ utilized the correct analytical framework in evaluating Plaintiff's non-exertional impairments, and adequately addressed Plaintiff's medication side-effects and medically determinable non-severe impairments due to anxiety and depression in his RFC analysis.

### C. THE ALJ PROPERLY CREDITED PLAINTIFF'S SUBJECTIVE TESTIMONY ABOUT HER MEDICATION SIDE-EFFECTS.

Plaintiff asserts that the ALJ erred in failing to consider the side-effects of Plaintiff's medication as required by *Schaudeck v. Commissioner*. 181 F.3d 429 (3d Cir. 1999). In *Schaudeck,* the Court noted that the ALJ failed to include *any* discussion of Mr. Schaudeck's medications, or their side effects. *Schaudeck*, 181 F.3d at 434. Whereas, in this case, the ALJ noted that Plaintiff testified that her medications caused a decrease in vision, fatigue, and made her "feel spacey." (Tr. 107; Doc. 11-3). The ALJ observed that Plaintiff's medical records reflected that Plaintiff was being prescribed narcotic pain medications. (Tr. 111; Doc. 11-3). Moreover, in making his RFC assessment, the ALJ concluded that Plaintiff's "[l]imitations pertaining to hazards are warranted based on a history of opiate abuse and ongoing use of narcotic pain medication." (Tr. 112; Doc. 11-3). Therefore, it appears that the ALJ not only considered Plaintiff's testimony regarding certain limitations due to side-effects of prescribed narcotic pain medication, but also accounted for her alleged limitations due to medication side-effects in his

RFC assessment. Accordingly, the Court finds that the ALJ correctly weighed Plaintiff's subjective testimony on the subject of her medication side-effects.

### D. The ALJ's determination that Plaintiff's subjective testimony was not entirely credible is supported by substantial evidence.

Plaintiff asserts that the ALJ's determination that her testimony was only partially credible was not supported by substantial evidence. Plaintiff argues that the ALJ erred in discounting Plaintiff's credibility because he failed to consider all of the regulatory factors enumerated in 20 C.F.R. §404.1929 and SSR 96-17.[10]

An ALJ's findings based on the credibility of a claimant are to be accorded great weight and deference, since an ALJ is charged with the duty of observing a witness' demeanor and credibility. *Frazier v. Apfel*, No. 99-CV-715, 2000 WL 288246, at *9 (E.D. Pa. Mar. 7, 2000) (quoting *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531). Further, the ALJ is charged with the obligation of indicating in his decision which evidence he has rejected and which he is relying on as the basis for his finding. *Schaudeck*, 181 F. 3d at 433. An ALJ may find testimony to be not credible, but he must give great weight to a claimant's subjective testimony. *Schaudeck*, 181 F. 3d at 433. The Social Security Regulations provide a framework under which a claimant's subjective complaints are to be considered. *See* 20 C.F.R. §404.1529. Under these

---

[10] The seven factors are: (i) extent of daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication; (v) treatment other than medication for the symptoms; (vi) measures used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §404.1529(c)(3).

regulations, symptoms such as pain, shortness of breath, and fatigue will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §404.1529(b). Once a medically determinable impairment which results in such symptoms is found to exist, the Commissioner must evaluate the intensity and persistence of such symptoms to determine their impact on the claimant's ability to work. 20 C.F.R. §404.1529(c). In so doing, the medical evidence of record is considered along with the claimant's statements. 20 C.F.R. §404.1529(c).

After careful review of the record as a whole, the ALJ found that Plaintiff had medically determinable impairments that could reasonably be expected to cause some of the symptoms alleged, but that the medical evidence did not support Plaintiff's statements concerning the intensity, persistence or limiting effects of her impairments. (Tr. 107-08; Doc. 11-3). In partially discounting Plaintiff's testimony, the ALJ noted that Plaintiff's allegations regarding the nature and severity of her impairments "continually evolved" and were "not consistent." (Tr. 112; Doc. 11-3). He also observed that Plaintiff was not forthcoming or candid with respect to testimony about her opiate dependency, or about Dr. Anselmi's knowledge of her opiate dependency. (Tr. 111-12; Doc. 11-3). Furthermore, the ALJ found that none of Plaintiff's treating doctors had recommended surgery, and that, most significantly, objective testing had shown only mild to moderate degenerative changes that would not cause the severity of symptoms and limitations alleged by Plaintiff. (Tr. 111-12; Doc. 11-3).

Plaintiff argues that the ALJ failed to discuss all seven factors required to evaluate subjective complaints of pain. In support of her position Plaintiff cites to *Canales v. Barnhart*, a case from the Eastern District of Pennsylvania, in which the Court held that the ALJ's

credibility assessment, based solely upon an incomplete assessment of Plaintiff's activities of daily living, was not supported by substantial evidence. *Canales v. Barnhart*, 308 F.Supp.2d 523 (E.D. Pa. 2004). In the current case, however, the ALJ's credibility finding is preceded by a five-page summary in which he cataloged the record evidence upon which he based his findings. The ALJ's summary included an accurate characterization of Plaintiff's testimony regarding her daily activities, subjective descriptions of pain, and a discussion of medical treatment including both pharmaceutical and non-pharmaceutical treatment. The ALJ also summarized the opinions and treatment notes of each treating, examining, and reviewing physician and psychologist, and results from various objective testing including: a CT scan of Plaintiff's abdomen (Tr. 108, 342-43; Docs. 11-3, 11-7); lab workups indicating that Plaintiff's rheumatoid factor and calcium levels were within normal limits (Tr. 108, 346-47; Docs. 11-3, 11-7); x-rays of Plaintiff's lumbar spine, cervical spine, and right foot (Tr. 118, 525-26, 528; Docs. 11-3, 11-8); an MR of Plaintiff's cervical spine (Tr. 118, 510-11; Docs. 11-3, 11-8); and a nerve conduction study. (Tr. 118, 443-46; Docs. 11-3, 11-8). Based on the record, the ALJ adequately considered the regulatory factors in assessing the credibility of Plaintiff's subjective testimony. Accordingly, the Court finds that the ALJ's determination that Plaintiff's testimony was only partially credible is consistent with the factors outlined in 20 C.F.R. §404.1529(c) and is supported by substantial evidence.

E. THE ALJ DID NOT ERR IN CONSIDERING PLAINTIFF'S RECEIPT OF UNEMPLOYMENT COMPENSATION BENEFITS IN HIS CREDIBILITY ASSESSMENT.

An individual can only collect unemployment if the individual is able and willing to accept work. 43 P.S. §801(d)(1). Plaintiff contends that the ALJ erred in discounting Plaintiff's credibility based on his finding that Plaintiff's receipt of unemployment compensation benefits

during the relevant period was inconsistent with her assertion that she was unable to work. (Doc. 12 pp. 11-13). Plaintiff argues that the ALJ improperly considered her receipt of unemployment benefits in his decision. (Doc. 12 p. 11). In support of her position Plaintiff relies on a memorandum entitled "Receipt of Unemployment Insurance Benefits by Claimant Applying for Disability Benefits" which states that the "[r]eceipt of unemployment benefits does not preclude the receipt of Social Security Benefits." (Doc. 12-1, Memorandum Dated Aug. 9, 2010, from Frank A. Cristaudo, Chief Administrative Law Judge). However, the same memorandum also states that "[t]he receipt of unemployment benefits is only one of many factors that must be considered in determining whether the claimant is disabled." (*Id.*). It is entirely proper for the ALJ to consider a claimant's receipt of unemployment compensation benefits as inconsistent with a claim of disability during the same period when assessing a Plaintiff's credibility. *Meyers v. Barnhart*, 57 Fed. Appx. 990, 991 (3d Cir. 2003) (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997)). Moreover, it is clear that Plaintiff's receipt of unemployment compensation benefits was not a determinative factor in the ALJ's analysis. Rather, it was one non-dispositive factor weighed by the ALJ in making his credibility determination. Accordingly, the Court finds that the ALJ considered Plaintiff's receipt of unemployment compensation benefits in a permissible manner, as a non-dispositive factor to assess Plaintiff's credibility.

### F.   THE ALJ PROPERLY EVALUATED PLAINTIFF'S RFC.

Plaintiff asserts that the ALJ failed to properly evaluate her RFC as required under *Burnett v. Commissioner*. 220 F.3d 112 (3d Cir. 2000). It is well-settled that an ALJ's RFC assessment must include a discussion of the individual's abilities. *Burnett v. Commissioner*, 220 F.3d 112 (3d Cir. 2000); 20 C.F.R. § 404.1545; *Hartranft*, 181 F.3d at 359 n.1 ("'Residual

functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).""). Here, the ALJ determined that Plaintiff had the RFC to perform "light" work, but that she was unable to crawl, kneel, climb ladders or scaffolds, do overhead work, or be exposed to unprotected heights, dangerous machinery, or pulmonary irritants. (Tr. 106-112; Doc. 11-3). Further, the ALJ found that Plaintiff could perform "less than frequent" fingering, bilaterally. (Tr. 106-112; Doc. 11-3). Plaintiff contends that the ALJ's decision is not supported by substantial evidence because: (1) the record does not support a finding that she can perform work that would require her to stand for up to six hours per day; and (2) the VE's testimony is not substantial evidence because the representative occupations she identified require "frequent" fingering. (Doc. 12 p. 15).

First, the Court finds that the ALJ adequately addressed Plaintiff's medically determinable, but non-severe, impairments of anxiety and depression in his RFC assessment. Plaintiff aptly notes that both her treating physician and the state agency examining physician opined that Plaintiff's conditions require that she be permitted to change positions.  In his February 2011 medical source statement, Dr. Anselmi opined that Plaintiff required a job where she was permitted to stand or walk for 2 minutes after every 15 minutes of work, and needed to be able to shift positions at will; his September 2011 medical source statement included more restrictive postural limitations. Similarly, Dr. Campbell opined that Plaintiff could stand or walk between 4 and 5 hours per 8 hour workday, or sit for eight hours was if she is permitted to alternate between sitting and standing. However, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is a reason to believe that the remand might lead to a different result." *Fisher v. Bowen*, 869 F.2d 1055, 1057 (3d Cir. 1989). Where the error by the ALJ is harmless, and would not affect the outcome of the

case, remand is not warranted. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). Here, the ALJ found that the postural limitations were unsupported by Plaintiff's treatment records. At the hearing, however, the ALJ did pose one hypothetical to the VE in which he included the limitation that the individual needed to change positions from sitting to standing at least every fifteen minutes. The VE responded that, with the additional postural limitation, such an individual would retain the ability to perform the representative occupations of furniture rental clerk, customer service representative for dealer accounts, and shipping/receiving weigher, but that the occupational base for the customer service representative would be reduced by 50%. Thus, even *if* the ALJ erred in failing to include a sit-stand option in his RFC, the evidence in the record establishes that the error would not affect the outcome of this case.

Second, the Court finds that the VE's testimony was consistent with the Dictionary of Occupational Titles. With respect to Plaintiff's assertion that the representative occupations identified by the VE required "frequent fingering," Plaintiff's argument seems to suggest that there may be some unresolved conflict within the VE's testimony. SSR 00-4 prescribes guidelines for treating VE occupational testimony in conjunction with the information contained in the DOT, which, with the companion publication *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, is the primary source of job requirements relied upon in making disability determinations. The ruling imposes upon an ALJ an "affirmative responsibility" to identify a reasonable explanation of any conflicts between a VE's testimony regarding the requirements of a specific job, and the information provided in the DOT. SSR 00-4; *see also Rutherford*, 399 F.3d at 557. When an apparent conflict arises, the ALJ must elicit a reasonable explanation before relying on the VE's testimony to support a decision that the claimant is not disabled. *Burns v. Barnhart*, 312 F.3d 113, 127 (3rd Cir. 2002). Plaintiff

28

asserts, without referencing any authority, that an individual capable of "less than frequent"[11] fingering is incapable of performing the representative occupations of furniture rental clerk, DOT 295.357-018, customer service representative for dealer accounts, DOT 241.367-038, and shipping/receiving weigher, DOT 222.387-014. The ALJ fulfilled his obligation under SSR 00-4 by asking the VE whether his testimony was consistent with the DOT. Further, the DOT entries for the positions of furniture rental clerk, customer service representative for dealer accounts, and shipping/receiving weigher indicate that each position requires "occasional" rather than "frequent" fingering. *See Dictionary of Occupational Titles*, §§ 295.357-018, 241.367-038, 222.387-074 (1991), *available at* Westlaw DICOT. Accordingly, the Court finds that there was no conflict in the VE's testimony and therefore the VE's testimony constitutes substantial evidence in support of the ALJ's determination.

---

[11] The frequency categories listed in the DOT are: "Not Present," "Occasionally", "Frequently," and "Constantly." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, Appendix C, p. 3 (1993), *available at* Westlaw SCODICOT. Frequency categories are defined as follows:

"Constantly" – "Activity or condition exists 2/3 or more of the time."
"Frequently" – "Activity or condition exists from 1/3 to 2/3 of the time."
"Occasionally" – "Activity or condition exists up to 1/3 of the time."
"Not Present" – "Activity or condition does not exist."

*Id.*

## VII.   CONCLUSION

Based on the foregoing, the Plaintiff's appeal of the decision of the Commission of Social Security is **DENIED**, and the decision of the Commissioner is **AFFIRMED**.

An appropriate Order shall follow.

Dated: March 6, 2014                          *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**